# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

DONALD LAMAR                                                                                  PLAINTIFF

V.                          CASE NO. 3:20-CV-88-BD

ANDREW SAUL, Commissioner
Social Security Administration                                        DEFENDANT

## ORDER

### I. Introduction

On July 27, 2017, Donald Lamar applied for disability benefits, alleging disability beginning June 28, 2017. (Tr. at 10). His claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Mr. Lamar's application. (Tr. at 21). Mr. Lamar requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1). Therefore, the ALJ's decision stands as the final decision of the Commissioner. Mr. Lamar filed this case seeking judicial review of the decision denying his benefits.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

### II. The Commissioner's Decision

The ALJ found Mr. Lamar had not engaged in substantial gainful activity since the alleged onset date of June 28, 2017. (Tr. at 12). The ALJ determined Mr. Lamar had the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (Doc. No. 4).

following severe impairments: plantar fasciitis, osteoarthritis of the feet, degenerative joint disease of the feet, degenerative disc disease of the cervical spine, degenerative joint disease of the right shoulder, diabetes mellitus, an affective disorder, and an anxiety disorder. *Id*.

After finding Mr. Lamar's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that he had the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) he could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds; (2) he could occasionally stoop, kneel, crouch, or crawl; (3) he could occasionally operate foot controls with the left lower extremity; (4) he could occasionally reach overhead; (5) he could perform work where interpersonal contact is only incidental to the work performed, defined here as meaning no sales or solicitation; (6) he could perform simple tasks that are routine and repetitive, and require little independent judgment to perform those tasks; and (7) he could tolerate occasional changes in a routine work setting. (Tr. at 16).

The ALJ found that Mr. Lamar was unable to perform any of his past relevant work as a combination welder. (Tr. at 19). Relying upon the testimony of a Vocational Expert, the ALJ found, based on Mr. Lamar's age, education, work experience and RFC, that jobs existed in significant numbers in the national economy that he could perform, including positions as a bench assembler, marker, document preparer, and addressing

clerk. (Tr. at 20-21). Thus, the ALJ determined that Mr. Lamar was not disabled. (Tr. at 21).

## III. Discussion

Mr. Lamar contends that substantial evidence does not support the ALJ's decision to deny benefits and maintains that the decision is based on legal error. He argues that the ALJ failed to develop the record, failed to support Mr. Lamar's physical RFC assessment with sufficient medical evidence, and relied on legally deficient vocational evidence at the fifth step of the analysis. The Court finds support for Mr. Lamar's arguments. Although Mr. Lamar alleged mental impairments, the Court will limit its discussion to his physical impairments, which remand to the Commissioner for further proceedings.[2]

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v.*

---

[2] See *Noerper v. Saul*, 964 F.3d 738, 741 n.1 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered [the claimant's] arguments and the record as a whole as to all of her impairments and their cumulative effect upon her limitations.").

*Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

An ALJ has a duty to fully and fairly develop the record independent of the claimant's burden to press his case. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). "This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." *Strongson v. Barnhart*, 361 F.3d 1066, 1071–72 (8th Cir. 2004). The ALJ's obligation to seek additional evidence is triggered, however, only if a critical issue is underdeveloped. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

In this case, there were no medical opinions from treating or examining physicians regarding Mr. Lamar's physical limitations. The only evidence in the record from a treating or examining source that addressed the effect of Mr. Lamar's physical impairments on his ability to work came from his podiatrist, Dr. Erik Rosenlof. Mr. Lamar injured his foot in a hunting accident when he was a teenager, resulting in multiple corrective surgeries. (Tr. at 16, 34). Dr. Rosenlof performed the most recent of these surgeries on June 30, 2017, to address Mr. Lamar's plantar fasciitis and pain associated with his foot deformity that was resistant to various conservative treatments. (Tr. at 327). Four weeks post-surgery, Dr. Rosenlof noted Mr. Lamar continued to complain of pain

4

throughout his foot. (Tr. at 330). Mr. Lamar stated he could not put weight on his feet for long periods of time and had been unable to work. *Id*. In his treatment notes, Dr. Rosenlof wrote he had a "long discussion with [Mr. Lamar] about his foot and continued pain," and that Mr. Lamar understood he "will never have full function of his foot." *Id*. He continued: "Due to previous injury and current deformity and posttraumatic arthritis [Mr. Lamar] may not be able to work." *Id*. Dr. Rosenlof suggested Mr. Lamar "try to get a job that is less physically demanding and/or apply for disability" and gave him a temporary handicap parking form. *Id*.

The ALJ considered this note in his analysis but rejected the suggestion that Mr. Lamar was unable to work as "one requiring a legal conclusion reserved for the Commissioner," and found that Dr. Rosenlof's note "[did] not reach a conclusion as to whether [Mr. Lamar] can perform past work, less demanding work, or any work." (Tr. at 18). The ALJ concluded the treatment note supported a finding that Mr. Lamar was incapable of performing his past work but did not foreclose work at a lower level of exertional demand.

A state agency consultant reviewed Mr. Lamar's records in March of 2018 and opined that Mr. Lamar was capable of working at a light exertional demand (including standing or walking for about six hours of an eight-hour workday) with occasional climbing and balancing. (Tr. at 83-84). The non-examining reviewing physician also

5

noted there was no evidence in the record regarding treatment for the degenerative disc disease in Mr. Lamar's spine and neck or for his chronic shoulder pain. (Tr. at 84).

Mr. Lamar sought a hearing with the ALJ and submitted additional medical records from April-December 2018 to support his claim. The later-admitted records include an April 2018 x-ray of his foot, which physicians called "abnormal" because it showed "marked deformity due to GSW [gunshot wound], 4th ray amputation, and nonunion on digits and MT [metatarsals]." (Tr. at 380). The additional records also demonstrate that Mr. Lamar sought treatment from a new physician because the narcotics he had been prescribed were not addressing his foot pain. (Tr. at 377). Additionally, the new records detail treatment for Mr. Lamar's neck and shoulder pain and include magnetic resonance imaging showing "hypertrophic degenerative change of the [acromioclavicular] joint" and a partial tear of the supraspinatus tendon in Mr. Lamar's right shoulder. (Tr. at 410). Following the MRI results, Mr. Lamar was referred to an orthopedic surgeon for further evaluation, but the record contains no orthopedic treatment records. (Tr. at 409). The state agency consultant did not review the April-December 2018 records in rendering his medical opinion, but the ALJ did receive the records before Mr. Lamar's video hearing on January 24, 2019. (Tr. at 10).

At the hearing, Mr. Lamar told the ALJ he could only be on his feet for 5-10 minutes at a time (Tr. at 43), and that he had been prescribed physical therapy for his shoulder (Tr. at 48). No treating physician ever provided a medical source statement or,

indeed, any medical opinion regarding Mr. Lamar's physical functional limitations. Twice during the hearing Mr. Lamar's attorney requested the ALJ order a physical consultative examination. (Tr. at 51, 59).

The ALJ did not order any physical consultative examinations before issuing the decision to deny Mr. Lamar's benefits, instead relying on only the medical records and the March 2018 state agency physician's opinion, who, as noted, did not have benefit of all relevant medical records. The ALJ found the state agency opinion persuasive but found "the totality of the medical evidence, including those periods after the state agency consultants reviewed the record, supports some reduction in the performance of postural tasks, climbing, and reaching." (Tr. at 19). By including these additional limitations, the ALJ acknowledged the later-submitted records had some impact on the ultimate RFC determination.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). While specific opinion evidence is not necessarily required, an ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017).

In this case, the ALJ necessarily speculated about the impact the results of the later-included records would have on Mr. Lamar's ability to work. The ALJ did not rely

7

on any medical opinion addressing those later-included records or on any treatment notes from any period that addressed Mr. Lamar's functional limitations. In fact, none of the treatment records establish what limitations Mr. Lamar's impairments imposed. For that reason, the ALJ's RFC determination lacks adequate support; and the ALJ erred by failing to fully develop the record.

## IV. Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is not supported by substantial evidence in the record as a whole. The ALJ failed to fully and fairly develop the record; and the RFC did not fully account for Mr. Lamar's limitations. Accordingly, this case is hereby remanded to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED, this 25th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE